CARNEY BATES & PULLIAM, PLLC
Randall K. Pulliam (*pro hac vice*)
rpulliam@cbplaw.com
Lee Lowther (*pro hac vice*)
llowther@cbplaw.com
Courtney Brown (*pro hac vice*)
cbrown@cbplaw.com
One Allied Drive, Suite 1400
Little Rock, AR 72202
Telephone: (501) 312-8500
Facsimile: (501) 312-8505

JACOBSON PHILLIPS, PLLC
Joshua R. Jacobson (*pro hac vice*)
joshua@jacobsonphillips.com
2277 Lee Road., Suite B
Winter Park, FL 32789
Telephone: (321) 447-6461

*Attorneys for Plaintiff Bradley Bailey and*
*the Proposed Class*

CONN LAW, PC
Elliot Conn, CA Bar No. 279920
elliot@connlawpc.com
100 Bush Street, Suite 1580
San Francisco, CA 94104
Telephone: (415) 417-2780
Facsimile: (415) 358-4941

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRADLEY BAILEY, individually, on behalf of all others similarly situated, and on behalf of the general public,<br><br>Plaintiff,<br><br>v.<br><br>BLOCK, INC., D/B/A CASH APP, SQUARE FINANCIAL SERVICES, INC., FIRST ELECTRONIC BANK, and DOES 1-10, INCLUSIVE,<br><br>Defendants. | Case No.: 4:25-cv-05625-YGR<br><br>**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW**<br><br>Dept: Courtroom 1, 4th Floor<br>Judge: Hon. Yvonne Gonzalez Rogers<br>Trial Date: None set<br>Date Action Removed: July 3, 2025 |

PL.'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiff, Sgt. Bradley Bailey, by and through undersigned counsel and pursuant to the Class Action Settlement Agreement and Release, dated March 9, 2026, and filed herewith (the "Settlement Agreement"), and the exhibits attached thereto, moves this Court for preliminary approval of the proposed settlement (the "Settlement") of this action (the "Action"). More specifically, Plaintiff respectfully requests this Court enter an order, substantially in the form of the proposed Preliminary Approval Order, (i) conditionally certifying the Settlement Class; (ii) preliminarily approving the proposed Settlement as fair, reasonable, and adequate; (iii) approving the form and manner of notice and directing that notice of the proposed Settlement be given to members of the Settlement Class; and (iv) scheduling a hearing before the Court to determine whether the Settlement should be finally approved.

## I.   **<u>INTRODUCTION.</u>**

Plaintiff, on behalf of himself and the members of the Settlement Class,[1] and Defendants Block, Inc. ("Block"), Square Financial Services, Inc. ("SFS"), and First Electronic Bank ("FEB") (collectively "Defendants," and together with Plaintiff, the "Parties") have reached a proposed Settlement in this Action after significant litigation, discovery, and arm's length negotiations. Further, the Parties participated in a full-day mediation session with a neutral mediator, followed by post-mediation negotiations, before reaching the agreement memorialized in the Settlement Agreement filed herewith.

The Settlement provides significant, tangible benefits to the Settlement Class. First, Defendants will establish a cash settlement fund of $615,000 for the benefit of Settlement Class Members. Second, unlike many class action settlements that require affirmative claims submissions, there is no claims process here. Instead, each Settlement Class Member who does not opt out will automatically receive a pro rata payment based upon his or her status as a covered borrower under the Military Lending Act ("MLA") who obtained a Cash App Borrow loan with a Military Annual Percentage Rate ("MAPR") exceeding thirty-six percent (36%).

---

[1] All capitalized terms not otherwise defined herein shall have the same meaning as ascribed to them in the Settlement Agreement.

PL.'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

The Parties have agreed to a robust Notice Program designed to provide individualized notice to each Settlement Class Member. Notice will be provided by email, when available, and by U.S. First Class Mail, and will notify each Settlement Class Member of the terms of the Settlement and their options thereunder. Any residual funds remaining in the Settlement Fund after an initial and secondary disbursement to Settlement Class Members and payment of all fees and costs will be disbursed to Operation Patriot Packs, a 501(c)(3) non-profit organization, as a *cy pres* award. No funds from the Settlement will revert to Defendants.

Class Counsel believe this Settlement represents an excellent result for the Settlement Class, particularly in light of the risks of continued litigation and the immediate, certain relief it provides. Class Counsel will request attorneys' fees equal to 25% of the Settlement Fund, which is the benchmark in the Ninth Circuit for the percentage-of-fund method, and reimbursement of out-of-pocket litigation expenses not to exceed $25,000. Consistent with Ninth Circuit precedent, Plaintiff will also request a Service Award of $5,000 in recognition of Plaintiff's service as the Class Representative.

Accordingly, Plaintiff respectfully submits that the Court should preliminarily approve the Settlement as fair, adequate, and reasonable, conditionally certify the Settlement Class, provide for notice to the Settlement Class, and schedule a hearing before the Court to determine whether the Settlement should be finally approved.

## II. BACKGROUND.

### A. Summary of Plaintiff's Claims

On May 28, 2025, Plaintiff, on behalf of himself and all others similarly situated, filed a Class Action Complaint (the "Complaint") in the Superior Court for the State of California in and for the County of Alameda against Defendants. On July 3, 2025, Defendants removed the Complaint to this Court. *See* Dkt. No. 1. The Complaint asserts two claims: (1) violation of the Military Lending Act ("MLA"), 10 U.S.C. § 987, *et seq.*, and (2) violation of the Georgia Payday Loan Act ("GPLA"), O.C.G.A. § 16-17-1, *et seq*. More specifically, the Complaint alleges that Defendants violated the MLA by extending "consumer credit" to Covered Members at a MAPR exceeding the MLA's 36% cap and using a method of access to borrowers' deposit or other financial

accounts as security for the obligation, which the MLA prohibits. Plaintiff further alleges that Defendants violated the GPLA by making loans of $3,000 or less at rates exceeding 16% simple interest per annum and lacking required Georgia licensure.

B.  Mediation and Resolution

On November 5, 2025, the Parties engaged in a full-day mediation session before well-respected mediator Ms. Michelle Yoshida of Phillips ADR Enterprises. With the assistance of Ms. Yoshida, the Parties were able to reach an agreement in principle that day. During the weeks following the mediation, the Parties worked cooperatively together to draft a comprehensive Settlement Agreement and exhibits thereto, memorializing the terms and conditions of the Settlement, which is being filed herewith.

**III. SUMMARY OF THE PROPOSED SETTLEMENT.**

**A.    Settlement Benefits.**

Under the proposed Settlement, Defendants shall establish a cash settlement fund of $615,000.00 (the "Settlement Fund") for the benefit of Settlement Class Members. In accord with paragraph II(B) of the Settlement Agreement, the Settlement Class shall include:

> Persons who, as of May 28, 2025, (i) obtained a Cash App Borrow loan from FEB
> or SFS through Block's Cash App platform, (ii) were covered borrowers as defined
> under the Military Lending Act and its implementing regulations at the time they
> obtained a Cash App Borrow loan, and (iii) the Military Annual Percentage Rate
> applicable to the Cash App Borrow loan exceeded thirty-six percent (36%).

The Settlement Class refines the class definitions[2] set forth in the Complaint in three discernable ways. First, the Complaint alleged two separate putative classes—a MLA Class and a separate Georgia Class. The Settlement Agreement consolidates the putative classes into a single

---

[2] The Complaint defined the MLA Class as "[a]ll Covered Members and dependents of Covered Members who entered into an agreement with Defendants to use the 'Cash App Borrow' (or substantially similar) service, in which Defendants were paid a finance charge (including, without limitation, a 5.00% flat fee or overdue interest charge." The Complaint also defined a separate "Georgia Class" consisting of Georgia residents that entered into similar agreements. The Georgia Class does not overlap membership with the MLA Class, and presents a different analysis with respect to the application of an arbitration provision.

PL.'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Settlement Class for purposes of resolution. Second, the Settlement Class includes a temporal limitation—specifically, the cutoff date of May 28, 2025 (the date the Complaint was filed)—whereas the Complaint's MLA Class definition contained no such date limitation. Third, the Settlement Class includes an explicit requirement that the MAPR applicable to the Cash App Borrow loan exceeded 36%, which narrows the class to those borrowers who actually experienced the alleged MLA violation. These refinements are appropriate for settlement purposes as they ensure that the Settlement Class consists only of those persons who were harmed by the alleged conduct and who have viable claims under the MLA.

Pursuant to the Settlement, unless a Settlement Class Member submits a valid and timely Request for Exclusion (*see* Settlement Agreement, Sections II(E)(4) and II(L)), he or she will automatically receive his or her *pro rata* distribution from the Settlement Fund ("Settlement Payment"), less any court-approved attorneys' fees and costs, service award, and costs of notice and settlement administration (the "Net Settlement Amount"), upon Court approval. Checks issued under the Settlement will be negotiable for 90 calendar days after the date of issuance. Settlement Payment checks that have not been negotiated within the 90 days after issuance shall be void. *See* Settlement Agreement, Section II(H)(2). Any replacement check issued to a Settlement Class Member shall remain valid and negotiable for 60 days from the date of reissuance. *See id*. at Section II(H)(3). After 150 days from the date of issuance of the initial checks, any remaining funds in the Net Settlement Fund shall be distributed to Settlement Class Members who deposited or cashed their initial Settlement Payment via a secondary distribution. Any costs associated with the secondary distribution will be paid from the Settlement Fund. If the amount of funds remaining is so minimal that a secondary distribution would be impracticable or infeasible, then the remaining funds shall be distributed to Operation Patriot Packs, a 26 U.S.C. § 501(c)(3) non-profit organization (the "Non-Profit Residual Recipient"). Any funds remaining following a secondary distribution shall be distributed to the Non-Profit Residual Recipient. In no event shall settlement funds be returned to Defendants.

In exchange for the consideration from the Defendants, the Action will be dismissed with prejudice upon final approval of the Settlement, and the Settlement Class Members will thereby

PL.'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

release all of the Released Claims against the Released Parties. *See* Settlement Agreement, Sections II(A)(13)-(14) and II(I).

**B.    Notice.**

As set forth in Section II(J) of the Settlement Agreement, notice to Settlement Class Members shall be made by (i) emailing the Email Notice (substantially in the form attached as Exhibit A to the Settlement Agreement) to those Settlement Class Members for whom an email address is available in the Settlement Class List; (ii) mailing, by first-class US mail, the Postcard Notice (substantially in the form attached as Exhibit B to the Settlement Agreement) to those Settlement Class Members for whom an email address are not available in the Settlement Class List; and (iii) posting the Long Form Notice (substantially in the form attached as Exhibit C to the Settlement Agreement) to the Settlement Website (collectively the Email Notice, Postcard Notice and Long Form Notice shall be referred to as the "Class Notice"). Skip tracing shall be performed by the Administrator for all returned mail. To the extent it is reasonably able to locate a more current mailing address using skip tracing, the Administrator shall re-mail the returned Class Notice to the particular Settlement Class Member by first-class US mail. All costs and fees related to dissemination of the Class Notice and skip tracing will be considered administrative costs to be paid from the Settlement Fund.

The Class Notice includes the following information: (1) a plain and concise description of the nature of the Action and the proposed Settlement, (2) the right of Settlement Class Members to request exclusion from the Settlement Class or to object to the Settlement, (3) specifics on the date, time and place of the Final Approval Hearing, and (4) information regarding Class Counsel's anticipated fee application and the anticipated request for the Class Representative's Service Award.

Notice will also be made in accordance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715. Pursuant to Section II(G) of the Settlement Agreement, the Settlement Administrator will, not later than ten (10) calendar days after the filing of this Settlement Agreement, on Defendants' behalf, serve or cause to be served notice of the proposed Settlement upon the appropriate federal and state officials, as provided by CAFA.

**C.    Class Counsel's Applications for (i) Attorneys' Fees and Costs and (ii) a Service Award.**

The Settlement Agreement provides that Class Counsel will file a motion with the Court requesting an award of attorneys' fees not to exceed 25% of the Settlement Fund,[3] or $153,750.00, to compensate them for all of the work already performed in this case, all of the work remaining to be performed in connection with this Settlement, and the risks undertaken in prosecuting this case. Based on the time dedicated to this Action—approximately 244 hours, Class Counsel estimates their lodestar to be approximately $200,025.50. Class Counsel will audit and finalize their lodestar and report final numbers in their fee application.

Class Counsel will also seek reimbursement of out-of-pocket litigation costs not to exceed $25,000. *Id.* at Section II(F)(1). The enforceability of the Settlement is not contingent on the Court's approval of Class Counsel's application for an award of attorneys' fees and costs. *Id*.

The Settlement Agreement further provides that Plaintiff will request a Service Award in an amount not to exceed $5,000. *Id.* at Section II(F)(2). This award will be paid out of the Settlement Fund and will compensate Plaintiff for his time and effort serving as the Class Representative. *Id.*

**IV.    PROPOSED SCHEDULE OF EVENTS.**

Consistent with the provisions of the Settlement Agreement, Plaintiff respectfully proposes the following schedule for the various Settlement events:

- Deadline for Defendants to provide the Settlement Class List: within fifteen (15) days of entry of an Order granting Preliminary Approval of the Settlement (*see id*. at Section II(A)(17));

- Deadline for disseminating Class Notice (the "Notice Date") and creating the Settlement Website: within 45 calendar days of entry of an Order granting Preliminary Approval of the Settlement (*see id*. at Sections II(A)(10) and II(G));

---

[3] "The Ninth Circuit has set 25% of the fund as a 'benchmark' award under the percentage-of-fund method." *Stanger v. China Elec. Motor, Inc*., 812 F.3d 734, 738 (9th Cir. 2016).

PL.'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

- Deadline for filing Class Counsel's application for award of attorneys' fees and expenses and a Service Award: no later than twenty-one (21) calendar days after the Notice Date (*see id*. at Section II(F)(1)-(2));

- Deadline for submission of requests for exclusion from the Settlement Class or objections to the Settlement, Plan of Allocation, the request for attorneys' fees and expenses, or the Service Award (the "Objection/Opt-Out Deadline"): no later than fifty-six (56) days after the Notice Date (*see id*. at Section II(K));

- Deadline for submission of responses to Objections, papers in further support of the Settlement, Plan of Allocation, or the request for attorneys' fees, expenses, and Service Award: no later than seven (7) calendar days before the Final Approval Hearing (*see id*.);

- Final Approval Hearing: at the Court's convenience, but at least 129 calendar days from entry of the Preliminary Approval Order; and

- Deadline for establishing and funding the Settlement Fund: within 30 calendar days of the Effective Date (*see id*. at Section II(E)).

## V. <u>APPLICABLE LEGAL STANDARDS.</u>

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of the compromise of claims brought on a class basis. The procedure for judicial review of a proposed class action settlement is well established:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. . . If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b) . . . The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of the notice of the certification, proposed settlement, and date of the final fairness hearing.

*In re M.L. Stern Overtime Litig.*, Case No. 07-CV-0118-BTM (JMA), 2009 WL 995864, at *3 (S.D. Cal. April 13, 2009) (quoting Manual for Complex Litigation Fourth § 21.632 (2004)); *Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, No. 4:20-CV-09077-JSW, 2024 WL

4868182, at *2 (N.D. Cal. Oct. 3, 2024) ("At the preliminary approval stage, . . . [a] [c]ourt need not review the settlement in detail at this juncture; instead, preliminary approval is appropriate so long as the proposed settlement falls within the range of possible judicial approval.") (internal quotation marks omitted); *Kui Zhu, et al., v. Taronis Technologies Incorporated, et al.*, No. cv-19-04529, 2020 WL 6868906, at *4 (D. Ariz. Nov. 23, 2020) (when considering to grant preliminary approval of a settlement, a court should consider "whether the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiency, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval"). Importantly, "[b]ecause class members will subsequently receive notice and have an opportunity to be heard on the settlement, [a] Court need not review the settlement in detail at [the preliminary approval stage]; instead, preliminary approval is appropriate so long as the proposed settlement falls 'within the range of possible judicial approval.'" *M.L. Stern Overtime Litig.*, 2009 WL 995864, at *3 (quoting A. Conte & H. B. Newberg, *Newberg on Class Actions*, § 11.25 (4th ed. 2002)); *Uschold v. NSMG Shared Services, LLC*, 333 F.R.D. 157, 169 (N.D. Cal. 2019) (stating "a full fairness analysis is unnecessary at th[e] [preliminary approval] stage," and concluding "[p]reliminary approval is thus appropriate if the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.") (internal quotations omitted); *Fisk v. Bd. of Trs. of California State Univ.*, No. 3:22-CV-173-TWR (MSB), 2026 WL 49335, at *3 (S.D. Cal. Jan. 7, 2026) (same).

Applying the standards above, preliminary approval should be granted because the proposed Settlement and the proposed form and program of providing Class Notice satisfy the requirements for preliminary approval in all respects. *See Adkins v. Facebook, Inc.*, No. C 18-05982 WHA, 2020 WL 6710086, at *1 (N.D. Cal. Nov. 15, 2020) (granting preliminary approval upon finding that the proposed settlement "appear[ed] non-collusive and within the realm of approvable"); *Deaver v. Compass Bank, et al.*, No. 13-cv-00222, 2015 WL 4999953, at *6 (N.D. Cal. Aug. 21, 2015) ("[P]reliminary approval of a settlement and notice to the class is appropriate if [1] the proposed

settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, [4] and falls within the range of possible approval.") (internal quotations and citation omitted).

## VI. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL.

As a matter of public policy, settlement is a strongly favored mechanism for resolving disputed claims. *Williams v. First Nat'l Bank,* 216 U.S. 582, 595 (1910). In the class action context in particular, "there is a strong judicial policy that favors settlements." *Guthrie v. ITS Logistics, LLC*, No. 1:21-CV-000729-EPG, 2026 WL 74010, at *5 (E.D. Cal. Jan. 9, 2026); *see also Rael v. Children's Place, Inc.*, No. 3:16-cv-00370, 2020 WL 434482, at *10 (S.D. Cal. Jan. 28, 2020) (noting the "'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned'") (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

Turning to the specifics of this Action, preliminary approval of the Settlement should be granted because the Settlement was the result of arm's length negotiations between the Parties, has no obvious deficiencies, treats Settlement Class Members equally, and is within the range of possible approval.

### A. The Settlement Satisfies the Criteria for Preliminary Approval.

1. The Settlement Was the Result of Arm's Length Negotiations Between the Parties, Has No Obvious Deficiencies, and Treats Settlement Class Members Equally.

Courts recognize that arm's-length negotiations conducted by competent counsel are *prima facie* evidence of fair settlements. The Court's role is to ensure "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (internal quotations omitted). Courts will approve class action settlements entered into after good-faith, arm's-length negotiations. *See Facebook*, 2020 WL 6710086, at *1; *Deaver*, 2015 WL 4999953, at *6. Moreover, "[t]he use of a mediator and the presence of discovery 'support the conclusion that the Plaintiff was appropriately informed in

negotiating a settlement.'" *Deaver*, 2015 WL 4999953, at \*4 (quoting *Villegas v. J.P. Morgan Chase & Co.*, No. cv 09-00261, 2012 WL 5878390, at \*6 (N.D. Cal. Nov. 21, 2012)).

Here, the Settlement was reached only after extensive factual investigation, informal discovery and a full-day mediation session before a well-respected mediator. More particularly, prior to and during the mediation, the Parties engaged in informal discovery and exchanged detailed mediation briefs. These materials addressed, among other things, the Parties' respective positions on the strength and weaknesses of Plaintiff's claims and Defendants' defenses, Rule 23 considerations, and the Parties' competing analyses of alleged damages. Through this exchange, the Parties developed a thorough understanding of the factual and legal issues in dispute and were able to evaluate the merits of their positions and the risks attendant to continued litigation. Thus, Class Counsel had a wealth of information at their disposal before entering into settlement negotiations. Consequently, Class Counsel were able to adequately assess the strengths and weaknesses of Plaintiff's case and balance the benefits of settlement against the risks of further litigation.[4]

Equally important, counsel for the Defendant vigorously defended their client's position and demonstrated their commitment to litigate this Action to its conclusion. Hence, the proposed Settlement represents concessions by both Parties after hard-fought litigation and negotiations conducted by experienced counsel on both sides who were thoroughly familiar with the factual and legal issues.

Additionally, there are no obvious deficiencies in the Settlement Agreement. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011); *Deaver*, 2015 WL 4999953, at \*4. Settlement Class Members who do not exclude themselves will automatically receive a *pro rata* distribution from the Settlement Fund less any court-approved attorneys' fees and costs, Service Award, and costs of settlement notice and administration. The Parties selected

---

[4] While the Settlement was reached prior to extensive formal discovery, this does not weigh against a finding that the Settlement is fair, adequate, and reasonable. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459 (noting "formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement" and affirming district court's order approving settlement).

PL.'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

the Settlement Administrator, Simpluris, Inc. ("Simpluris"), after conducting a competitive bidding process in which three qualified administrators submitted proposals. Each bid was evaluated based on factors including experience with similar class action settlements, proposed administration methodology, staffing and technological capabilities, and overall cost. After reviewing and comparing the proposals, the Parties agreed that Simpluris offered the most efficient and cost-effective approach to administering the Settlement. Class Counsel have worked with Simpluris on three matters in the last years—one that remains ongoing and two others that received final approval and have since concluded. In accord with federal government enforcement agencies, Simpluris maintains robust procedures for securely handling Settlement Class Member data. More specifically, Simpluris maintains SOC 1 and SOC 2 compliance and undergoes third-party audits to validate its security practices, and it aligns with recognized standards such as the Federal Information Security Management Act (FISMA) and guidance from National Institute of Standards and Technology (NIST) to protect client and class data. The company uses proprietary systems and industry-standard technologies to safeguard data during processing, storage, and transmission. *See* https://www.simpluris.com/our-approach/. Simpluris also adheres to strict privacy policies, only using collected data for the express purpose of administering the settlement and disposing of all class member data once the administration of a case is complete and retention is no longer necessary for settlement purposes or legal compliance. *See* https://www.simpluris.com/privacy-policy/.

Further, the anticipated requests for attorneys' fees and costs and Service Award are reasonable and directly in line with prevailing standards in the Ninth Circuit. *Stanger*, 812 F.3d at 738 ("The Ninth Circuit has set 25% of the fund as a 'benchmark' award under the percentage-of-fund method."); *Roe v. Frito-Lay, Inc.*, No 14CV-00751, 2017 WL 1315626, at *8 (N.D. Cal. Apr. 7, 2017) ("[A] $5,000 incentive award is 'presumptively reasonable' in the Ninth Circuit." (collecting cases)). Furthermore, the Settlement provides for an initial and secondary distribution, with any remaining funds being disbursed to the Non-Profit Residual Recipient as a *cy pres* award. Thus, there is no issue of reverter.

Additionally, the scope of the release is sufficiently tailored to release only those claims

PL.'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

related to the allegations of this Action, *i.e.* claims arising under the Military Lending Act, 10 U.S.C. § 987 *et seq.* and the Georgia Payday Loan Act, O.C.G.A. § 16-17-1 *et seq. See* Settlement Agreement, Section II(A)(13); *Ruffulo v. Farmers Ins. Exch.*, No. CV 23-1796 FMO (MAAX), 2026 WL 64106, at *11 (C.D. Cal. Jan. 5, 2026) ("under the release, settlement class members are not giving up any claims unrelated to those asserted in this action, the court finds that the release adequately balances fairness to absent class members and recovery for the class with defendants' business interest in ending this litigation.").

Lastly, there is no unfair or preferential treatment of any Settlement Class Member. *See Hendricks v. Starkist Co.*, No. 13-CV-00729-HSG, 2015 WL 4498083, at *6 (N.D. Cal. July 23, 2015). Here, payments to Settlement Class Members will be made on a *pro rata* basis. Thus, each Settlement Class Member is given fair and equal treatment.

In sum, the Settlement was achieved through arm's-length negotiations conducted by competent counsel, contains no obvious deficiencies, and treats Settlement Class Members equally. Accordingly, there are no grounds to doubt the Settlement's fairness.

2. <u>The Settlement Falls Within the Range of a Reasonable Settlement While Guaranteeing Settlement Class Members Tangible and Immediate Benefits Without the Risks of Further Litigation.</u>

The value of the proposed Settlement falls well within the range of a reasonable settlement. The determination of a "reasonable" settlement is not susceptible to a mathematical equation yielding a particularized sum. *See Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972) ("[I]n any case there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion[.]"); *see e.g., Ruffulo*, 2026 WL 64106, at *11 (finding settlement was within the range of reasonableness "particularly when viewed in light of the litigation risks and the costs, and delay of trial and appeal."). To determine if a settlement falls within the range of possible approval, a court considers "plaintiff's expected recovery balanced against the value of the settlement offer, in light of the risks of further litigation." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).

PL.'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Here, the Parties have determined, based upon Defendants' records, that the proposed Settlement creates a Settlement Fund of $615,000.00, or roughly 17.6% of Plaintiff's alleged statutory damages measured by one MLA violation per transaction. Class Counsel believe this is a fair and adequate result for Settlement Class Members that compares favorably with other settlements. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), *as amended* (June 19, 2000) (holding that "the [s]ettlement amount of almost $2 million was roughly one-sixth of the potential recovery, which, given the difficulties in proving the case, [was] fair and adequate"); *In re Uber FCRA Litig.*, No. 14-CV-05200-EMC, 2017 WL 2806698, at *7 (N.D. Cal. June 29, 2017) (granting preliminary approval of settlement that was worth "7.5% or less" of the expected value).

While Plaintiff estimates that the maximum value of his claims to be larger than the settlement amount, when the maximum value of Plaintiff's and the Class's claims are discounted by the identifiable risks, experience dictates that the interests of the Class are better served by the proposed Settlement. *See Noll v. eBay, Inc.*, 309 F.R.D. 593, 606 (N.D. Cal. 2015) ("Immediate receipt of money through settlement, even if lower than what could potentially be achieved through ultimate success on the merits, has value to a class, especially when compared to risky and costly continued litigation."); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015) (same); *see also West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) ("In considering the proposed compromise, it seems also to be of importance that (if approved) the substantial amounts of money are available for class members now, and not at some distant time in the future. The nature of these actions is such that a final judgment, assuming it to be favorable, could only be obtained after years of expensive litigation. It has been held proper to take the bird in hand instead of a prospective flock in the bush.") (citations omitted); *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993) (noting that even a favorable jury verdict "is no guarantee of ultimate success").

Here, the risks of continued litigation are substantial. Defendant has vigorously denied Plaintiff's allegations of wrongdoing and argued that any violation of the MLA would not be actionable in any event as Defendants maintain procedures reasonably adapted to avoiding errors

13

PL.'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

and complying with the MLA. 10 U.S.C. § 987(f)(5)(D); *see Churchill Village, L.L.C. v. General Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 259-60 (S.D.N.Y. 2003) (citing *In re Warner Comm. Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986)). Absent the Settlement, Plaintiff anticipates that Defendant would likely have vigorously opposed class certification and moved to dismiss and for summary judgment. Thus, continued litigation of the action would have been lengthy and expensive, and the possibility of Plaintiff litigating this case on a class basis through judgment is uncertain.

Moreover, even if Plaintiff was to prevail through continued litigation, he still faces significant risks as an appeal by Defendant would be likely. "It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced." *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. at 743-44. For example, in *In re Apple Computer Sec. Litig.*, No. C-84-20148-(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991), the jury rendered a verdict in favor of plaintiffs and found recoverable damages in excess of $100 million. Nonetheless, the trial court disagreed and overturned the verdict, entering a judgment notwithstanding the verdict for the individual defendants and ordering a new trial with regard to the corporate defendant. *Id*.

In sum, the proposed Settlement provides Class Members immediate benefits without the risks and costs of further litigation. In contrast to these tangible, immediate benefits, the outcome of continued litigation and a trial against the Defendants is uncertain. Accordingly, the benefits conferred by the Settlement are within the range of reasonableness. Thus, preliminary approval of the proposed Settlement should be granted.

### B.      The Proposed Notice Program Is Adequate.

The Ninth Circuit has recognized that "[n]otice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal quotations omitted). Here, the Class Notice meets all the requirements of Rule 23(c)(2)(B) by advising Settlement Class Members of the nature of the claims involved in the case; the essential terms of the Settlement, including the definition of the Settlement Class and the method

PL.'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

of distribution of settlement proceeds; the rights of Settlement Class Members to participate in the Settlement, to request exclusion from the Settlement Class or to object to the Settlement, and specifics on the dates for exercising these rights; the requirements for opting out, for objecting, and for making an appearance at the Final Approval Hearing; and the time and location of the Final Approval Hearing. Thus, the Class Notice provides the necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement. The Class Notice also contains information regarding the anticipated amount of Class Counsel's requests for attorneys' fees and costs, and a Service Awards for the Class Representative.

Moreover, the proposed Settlement requires Plaintiff to notify Settlement Class Members of the proposed Settlement by (i) emailing the Email Notice to those Settlement Class Members for whom an email address is available in the Settlement Class List, (ii) mailing, by first-class US mail, the Postcard Notice to those Settlement Class Members for whom an email address are not available in the Settlement Class List; and (iii) posting the Long Form Notice to the Settlement Website. Thus, Settlement Class Members have been identified from Defendant's internal records and shall receive individual notice, supplemented by posting of the Long Form Notice on the Settlement Website.

Accordingly, the form and manner of the Class Notice proposed here fulfills all of the requirements of Rule 23 and due process.

## VII.    CONDITIONAL CERTIFICATION OF THE SETTLEMENT IS APPROPRIATE.

In order to proceed with the preliminary approval process, it is necessary for the Court to preliminarily certify a class for purposes of the Settlement. Rule 23 provides that an action may be maintained as a class action if each of the four prerequisites of Rule 23(a) is met and the action qualifies under one of the subdivisions of Rule 23(b). Rule 23(a) provides:

> (a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:  (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Additionally, Rule 23(b) provides, in relevant part:

15

(b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if: (1) . . ., or (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

As set forth below, all of the requirements of Rule 23(a) and (b)(3) are met in this case, justifying preliminary certification of the proposed Settlement Class for settlement purposes.

### C. The Class Is Sufficiently Numerous.

"Numerosity is usually satisfied where the class consists of 40 or more members." *Nevarez v. Forty Niners Football Co., LLC*, 326 F.R.D. 562, 576 (N.D. Cal. 2018). Here, based on a review of Defendant's internal records, the Parties have ascertained that the Settlement Class consists of approximately 1,720 individuals who are dispersed throughout the nation. As such, the Settlement Class clearly satisfies the numerosity requirement.

### D. There Are Common Issues of Law or Fact Common to the Settlement Class.

The commonality requirement of Rule 23(a)(2) is satisfied in this Action because there are many questions of law and fact common to the Settlement Class that focus on Defendant's common practice of charging and collecting more than a MAPR exceeding the MLA's 36% cap. *See Silveira v. M&T Bank,* No. 2:19-cv-06958-ODW(KSx), 2021 WL 2403157, at *3 (C.D. Cal. May 6, 2021) (finding allegations that class members were charged "Pay-to-Pay Fees for mortgage payments made over the phone" satisfied commonality and granting preliminary approval of the proposed settlement); *Phillips v. Caliber Home Loans, Inc*., Case No. 19-cv-2711, 2021 WL 3030648, at *7 (D. Minn. July 19, 2021) (stating "Plaintiffs' claims here depend on the common contentions that Pay-to-Pay Fees are neither authorized by Class Members' mortgages not permitted by law" and finding commonality "including both questions of law and questions of fact"). The common issues of law and fact in this Action include, among other issues: (1) whether Defendants' cash advances constitute extensions of "consumer credit" subject to the protections and limitations of the MLA; (2) whether Defendants' advances exceed the MLA's interest-rate cap; (3) whether Defendants failed to provide required credit disclosures in violation of the MLA; (4) whether Class members

are entitled to actual or statutory damages for the aforementioned violations and, if so, in what amounts. Consequently, there are fundamental, common issues of law or fact.

### E.    The Claims of Plaintiff Are Typical of the Claims of the Settlement Class.

"[R]epresentative claims are typical if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Here, Plaintiff's claims are based on Defendant's systematic collection of a MAPR in excess of the MLA's interest-rate cap. Plaintiff's and the Settlement Class's claims are based on the same legal theories. Because Plaintiff's claims arise from the same course of conduct that affected all Settlement Class members and are based on the same legal theories as the claims of all Settlement Class members, typicality is satisfied.

### F.    Plaintiff and Class Counsel Have Fairly and Adequately Represented the Interests of the Settlement Class, and Will Continue to Do So.

Adequacy requires the representative of a class to provide fair and adequate representation of the class. Fed. R. Civ. P. 23(a)(4). "To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (quoting *Hanlon*, 150 F.3d at 1020).

Here, Plaintiff has retained counsel with significant expertise in complex civil and insurance litigation. More specifically, Class Counsel are nationally recognized law firms within the field of complex class action litigation and have experience in matters involving consumer claims Under the MLA and related to excessive, usurious, and/or unauthorized fees. *See* Joint Declaration of Class Counsel at ¶¶ 3-5 and Exhibits A-B thereto. In addition, Class Counsel are well-capitalized, allowing them to dedicate considerable resources to the fullest extent necessary to achieve the best possible result for class members. *Id*. at ¶ 5. Thus, Class Counsel are unquestionably qualified to undertake this litigation.

Moreover, Plaintiff and the Settlement Class desire the same outcome of this litigation, namely to retrieve the largest possible monetary recovery from the Defendants related to the alleged improper collection of fees. Thus, Plaintiff's claims coincide identically with the claims of the Settlement Class. Additionally, because of this, Plaintiff has vigorously prosecuted this case for the benefit of all members of the Settlement Class. Further, there is no conflict or any antagonism between Plaintiff and the Settlement Class. Consequently, Plaintiff satisfies the adequacy requirement.

**G.      The Common Questions of Law and Fact in this Action Predominate Over Any Individual Issues and a Class Action Is the Superior and Most Efficient Means to Adjudicate the Claims.**

In accordance with Rule 23(b), certification is appropriate when common questions of law or fact predominate over individual questions and a class action is superior to other available means of adjudication. *See* Fed. R. Civ. P. 23(b)(3). These requirements are satisfied in this case.

1.      Common Questions of Law and Fact Predominate.

In analyzing the predominance factor, the United States Supreme Court has defined this inquiry as establishing "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products Inc. v. Windsor*, 521 U.S. 591, 622 (1997). In this regard, the predominance inquiry "focuses on the relationship between the common and individual issues. When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon v Chrysler Corp.*, 150 F.3d at 1022 (citations and quotations omitted); *see also In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 148 F.3d 283, 314-15 (3d Cir. 1998) (affirming the certification of a nationwide consumer fraud class).

Common questions of law and fact predominate here because the central liability questions in this case — whether Defendants' loans exceed the MLA statutory rate cap of 36% MAPR — can be resolved for all Settlement Class Members through generalized evidence. *See Silveira,* 2021 WL 2403157, at *4 (finding whether defendant's "policy of charging Pay-to-Pay Fees was in breach of the Class Members' contracts and a violation of federal and state law" predominate over

18

PL.'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

individualized questions); *Watkins v. Rapid Fin. Sols., Inc.*, No. 320CV00509MMDCSD, 2022 WL 16964808, at *8 (D. Nev. Nov. 15, 2022) (finding common questions predominated including "whether Defendants' notices on the Cards and accompanying documentation satisfied EFTA's disclosure requirements before imposing inactivity fees" and "whether unilaterally transferring class members' funds to a fee-laden Card is an unfair or deceptive trade practice, as defined by Nevada statute.").

### 2. A Class Action is the Superior Method of Adjudicating this Case.

As explained in *Amchem*, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . .for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. Thus, any manageability problems that may have existed in this case are eliminated by the proposed Settlement. *See e.g.*, *Silveira*, 2021 WL 2403157, at *4 (finding superiority satisfied).

## VIII. CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court enter an order, substantially in the form of the proposed Preliminary Approval Order: (i) conditionally certifying the Settlement Class; (ii) preliminarily approving the proposed Settlement as fair, reasonable, and adequate; (iii) approving the form and manner of notice and directing that notice of the proposed Settlement be given to members of the Settlement Class; and (iv) scheduling a hearing before the Court to determine whether the Settlement should be finally approved.

Dated:  March 13, 2026                    Respectfully submitted,

*/s/ Randall K. Pulliam*
Randall K. Pulliam (*pro hac vice*)
rpulliam@cbplaw.com
Lee Lowther (*pro hac vice*)
llowther@cbplaw.com
Courtney Brown (*pro hac vice*)
cbrown@cbplaw.com
CARNEY BATES & PULLIAM, PLLC
One Allied Drive, Suite 1400
Little Rock, AR 72202
Telephone: (501) 312-8500
Facsimile: (501) 312-8505

JACOBSON PHILLIPS, PLLC
Joshua R. Jacobson (*pro hac vice*)
joshua@jacobsonphillips.com
2277 Lee Rd., Ste. B
Winter Park, FL 32789
Telephone: (321) 447-6461

CONN LAW, PC
Elliot Conn, California Bar No. 279920
elliot@connlawpc.com
100 Bush Street, Suite 1580
San Francisco, CA 94104
Telephone: (415) 417-2780
Facsimile: (415) 358-4941

*Attorneys for Plaintiff Bradley Bailey and the Proposed Classes*

PL.'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT